## PERFORMANCE OF JANITOR SERVICE IN PUBLIC SCHOOL BUILDINGS BY CONTRACT.

Court of Common Pleas of Hamilton County.

DAVID E. FEHL V. BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF CINCINNATI.*

Decided June 28, 1920.

*Schools—Award of Contract for Janitor Service—Provision of Section 7623 as to Public Competition Not Applicable—Incidental Variations from Specifications do Not Render Such a Contract Invalid, When.*

1. In the making of contracts for the convenience and prosperity of the schools under their control, boards of education are limited only by the provisions of Section 7623, G. C., as to public competition.
2. A contract for the cleaning and performance of janitor service in public school buildings is not within contemplation of Section 7623, and may therefore be entered into by a board of education without advertisement for public bidding.
3. A contract for such service in a large number of school buildings is not rendered invalid by awarding the work in all the buildings to a single contractor, notwithstanding the specifications on file used the word contractor in the plural and also incidentally required that he be in attendance at each school building from 7 a. m. till 6 p. m.

*Saml. L. Hagans,* and *James B. Swing,* for plaintiff.

*Harry R. Weber,* Asst. City Solicitor, and *C. J. McDiarmid,* for defendant.

MATTHEWS, J.

The plaintiff suing as a tax payer seeks to have the defendant enjoined from carrying out a contract which it has entered into with James M. Sprague, for school janitor service.

The evidence discloses that the defendant advertised for sealed proposals for cleaning and operating about 80 school buildings, in accordance with certain specifications on file in its office. Sealed proposals were submitted by various bidders for cleaning and operating specific school buildings. The pro-

---

* Error not prosecuted.

posal of James M. Sprague was to clean and operate all the school buildings referred to; that proposal was accepted by the board of education, and the contract, the performance of which it is sought to have enjoined in this action, was entered into. Whether the board of education acted wisely, or whether the plan of farming out all the work of cleaning the school buildings to one person will prove satisfactory is a question of policy with which the court has no power to interfere. The court is called upon to decide whether the board of education had the power to make such a contract, whether it proceeded according to law in so doing, and whether the contract so entered into is one the attempted performance of which should be enjoined.

The plaintiff urges two grounds as the basis of the relief which he seeks, and these are, first, that the contract entered into by the defendant with James M. Sprague is not in conformity to the advertisement and specifications, and is therefore illegal and void; second, that independently of compliance with any statutory requirements, the attempted performance of the contract should be enjoined because it appears upon its face to be impossible of performance in accordance with its terms.

The postulates of the first ground urged by the plaintiff are:

(a)  That Section 7623 of the General Code prescribing the method of making certain contracts applies.

(b)  That the proposal made by James M. Sprague, and the contract entered into by the defendant do not conform to the advertisement and specifications required by said Section 7623.

To determine the validity of the plaintiff's first ground requires, therefore, a consideration of the powers of the board of education to contract, and whether Section 7623 of the General Code limits those powers.

By force of Section 4749, General Code, it is enacted that boards of education shall be bodies politic and corporate and "as such capable of suing and being sued, contracting and being contracted with."

By Section 7620 it is made the duty of boards of education, among other things, to "make all other provisions necessary for

the convenience and prosperity of the schools within the sub-district.''

By Section 7690, boards of education are given the ''management and control of all the public schools of whatever name or character in the district,'' and power to ''appoint a superintendent of public schools, truant officer and janitors, and fix their salaries * * * and such other employees as it deems necessary.''

By force of these sections of the statutes it is the opinion of the court that boards, of education have full power to make all contracts which may be reasonably regarded as ''necessary for the convenience and prosperity of the schools,'' unless restrained by the terms of Section 7623.

The effect of conferring power to contract upon a board of education is stated in *Kraft* v. *Board of Education,* 67 N. J. Law Rep., 512. It appears from the statement of facts in that case that the board of education had power to contract for school furniture without public competition. The board appointed a committee and invited proposals in accordance with certain specifications, and in discussing the right of the board of education when not being legally bound thereto, it did invite competitive bidding, the court at page 517 says:

''A municipal body may award a contract independently of the proposals it may have invited, provided the power to do so is exercised *bona fide* and with reasonable discretion, having regard to the public good.''

See also on this subject, *Coward* v. *Mayor, etc.,* 67 N. J. L., 470.

It is urged, however, that Section 7623 prescribes the manner in which a board of education should proceed in such a transaction as that now under consideration. That Section provides:

''When a board of education determines to build, repair, enlarge or furnish a school house or school houses, or make any improvement or repair provided for in this chapter, the cost of which will exceed in city districts $1,500, and in other districts $500, except in cases of urgent necessity or for the secur-

ity and protection of school property, it must proceed as follows, etc "

It seems to the court that this section is clear and does not require construction. It clearly does not apply to all contracts that a board of education might enter into; by its terms it only applies to such contracts as a board of education may enter into when it determines "to build, repair, enlarge or furnish a school house or school houses, or make any improvement or repair provided for in this chapter."

That it does not apply to all classes of contracts or to any class other than that to which it is limited by its express terms, was decided in the case of *Gosline* v. *Toledo Board of Education*, 11 C. C. (N. S.), 195. Section 7623 of the General Code was Section 3988 of the Revised Statute. In *Gosline* v. *Toledo Board of Education* a tax payer sought to enjoin the board of education from entering into a contract for the purchase and sale of 6,000 tons of coal for the use of the schools in the city of Toledo, claiming that among other things, it had not complied with the law by submitting the supplying of the coal to public competition. The points decided as stated in the syllabus, are as follows:

"1. Neither Section 3987, Revised Statutes, specifically empowering boards of education, among other designated things, to provide fuel; nor Section 3988, prescribing for bids for certain designated supplies and contracts, but omitting mention of fuel; nor Section 4017, requiring the director of schools, where one is chosen, to advertise for bids, etc., without providing when or how he shall advertise therefore requires advertising bids for coal or purchase from the lowest responsible bidder.

"2. A broad discretion is reposed in boards of education regarding the purchase of necessary supplies for schools; and in the purchase of fuel, gradation of quality of coal, heating capacity, adaptability to heating apparatus, and experience or skill of janitors and other persons managing school furnaces are essential facts to be considered in making selection therefore, which may render it inadvisable to accept the lowest priced coal offered; and where it appears that the board has complied with the requirement that it act in good faith for the best good of the schools according to the light and understand-

ing of its members, acceptance of other than the cheapest coal will not be enjoined.

"3.  A director of schools is not required, under Sections 3988 and 4017, to go to the expense of advertising for bids for every trivial thing in the way of supplies which may have been ordered by the board to be purchased."

It seems to the court that a contract providing for the cleaning of school buildings is as clearly not one of those kinds of contract covered by Section 7623 as was the contract for the supplying of the coal with which to heat the school buildings.

In discussing the character of the contract or employment for janitor service, and the powers of the board of education relating thereto, the Court of Appeals in the case of *State ex rel* v. *Witt,* 3rd Ohio Ap. Rep., 414, at 418, 20 C. C. (N. S.), 529, says:

"A careful examination of the laws relating to the board of education fails to show lack of authority on its part to make and carry out the rules and regulations provided for the care and maintenance of its buildings.  Broad powers are given to the board under Section 7620, General Code, to 'make all other provisions necessary for the convenience and prosperity of the schools.'  The usual limitations as to public letting of contracts by bids seem to be required as to such board only as to matters falling within the terms of Section 7623, General Code, with reference to buildings and repairs.  *Gosline* v. *Toledo Bd. of Ed.,* 11 C. C. (N. S.), 195."

In the last cited case the court was construing a contract of employment of a janitor for a single school building, the terms and conditions of which were very much like the terms and conditions of the Sprague contract.  The court held in that case that for the purpose of the civil service law a janitor should be regarded as an employee, but in the language just quoted the court called attention to the fact that the legal requirements as to public letting of contracts by bids did not apply to it.  The fact that the contract in question is for the cleaning of many school buildings instead of one, seems to the court to be a difference in degree and not in kind, and that the same legal principle rules both.

The court is therefore of the opinion that under the express provisions of the General Code giving to boards of education the power to contract and be contracted with, and to make all necessary provisions for the convenience and prosperity of the schools, the defendant had power to enter into the contract for the cleaning of the school houses without submitting the contract to public competition in accordance with Section 7623 referable to other specific classes of contracts.

Assuming that Section 7623 prescribes the method by which the board of education is required to exercise its power in making a contract for the cleaning of public school houses, it still remains a question of fact whether this contract was let in accordance with its terms. The board of education did advertise for sealed bids in accordance with certain specifications on file. It is claimed, however, that the advertisement and specifications properly construed contemplated and required a sealed proposal referable to each separate school house and binding the bidder to be personally present at and in said school house, supervising the cleaning from 7 a. m. until 6 p. m. every day throughout the year, and as much earlier and later without extra compensation, as might be required to insure the proper performance of the work, etc.

The evidence shows that one set of specifications was used for all the school buildings, and in these specifications the buildings were divided into three classes based upon the method by which they were heated, but the specifications generally were applicable to all classes of buildings.

It seems to the court that in the construction of sporadic expressions in these specifications, it must be kept in mind that they apply to not one but approximately 80 school buildings. It is urged that because the word "contractors" is used that that shows that it was contemplated that there should be a separate, individual and different contractor for each school building. In the opinion of the court the use of the term in the plural number can not reasonably be said to have misled bidders. The most that can be said is that by the use of the plural number the board of education contemplated that there might be

more than one contractor, and not that there must be more
than one.   To hold otherwise would be placing a more literal
construction upon these specifications than is required in the
construction of the statutes.  By legislative enactment it is
provided that where in a statute the plural number is used, it
shall be held to include the singular number and *vice versa*.

It is also urged that the specifications require the personal
attendance of the contractor in the school building from 7 a. m.
until 6 p. m., and that where one contractor is awarded the
contract for cleaning all the school buildings he could not per-
form that provision of the contract, and that that shows it was
contemplated that there should be a different contract for each
school building, and that bidders were justified in assuming
from that provision of the specifications that they were limited
to bidding upon the cleaning of one school building only.  It
seems to the court that that provision in the specifications must
be read in conjunction with other provisions.   It is provided
in the specifications that where the cleaning contractor is absent
for any reason and it becomes necessary to employ a substitute,
such substitute shall be paid by the cleaning contractor.   It is
also provided that the cleaning contractor shall keep sufficient
help to maintain the building in accordance with the specifica-
tions, and that the contractor and assistants must at all times
present a clean and neat appearance.

In the advertisement it is provided that the bid must be
on blank forms provided by the board of education.   Such
blank form of bid has not been offered in evidence and the
court is not therefore advised of its terms.   Presumably, how-
ever, the contract entered into conforms to the terms of the bid,
and the contract is before the court.   In the contract the con-
tractor has agreed to supply a sufficient number of properly
skilled helpers satisfactory to the business manager and the
board, and the board is authorized upon his failure to prose-
cute the work in such manner as said business manager of said
board deems satisfactory, upon five days written notice to annul
and determine the contract, and re-let the work.   If the cost
of the work under the re-letting exceeds the contract price the

contractor agrees to pay the difference, and if the work cost less the contractor is to be paid the difference. The contractor agrees to give his personal attention to the faithful prosecution of said work and to keep the same under his personal control; and it is also agreed that all disputes or differences which may arise in the construction or in the performance of the contract, shall be submitted to and be determined by the business manager of the board, whose decision shall be final and conclusive upon the contractor, providing the board shall upon the appeal of the contractor within ten days affirm the decision of the business manager.

By all these provisions of the specifications and the contract the board of education reserves to itself the right to pass upon the character and qualifications of the employees of the contractor, so that whether it is the contractor who is present in the school building from 7 a. m. to 6 p. m., or whether it is an employee of said contractor, still such person will, of necessity, and under the terms of this contract, be one whose character and qualifications are approved by the board of education. The element of personal equation between the person in charge of the school building and the board of education is thereby established, and by the application of the principle *qui facit per alium, facit per se,* the cleaning contractor would have performed the provision requiring attendance at the building from 7 a. m. until 6 p. m., and at the same time the guaranty of the board of education of the personal fitness of those who come in contact with pupils and teachers is maintained.

Furthermore, if this contract is to be ruled by the terms of Section 7623 of the General Code, it would be necessary to eliminate altogether the element of personal equation which plaintiff's counsel insists should be preserved, and which the terms of the specifications and contract do preserve. It is provided in that section that "none but the lowest responsible bid shall be accepted," and to bring the contract within the terms of the section it is necessary to place it in the category of contract for building, repairing, enlarging or furnishing a school house, and require the board to accept the lowest bid provided the bidder is responsible, without any investigation

or consideration of the moral and temperamental fitness of the bidder; and if the contract should be placed upon that plane, then whether the contractor was personally present in a school building, or whether he was there vicariously through an agent, would equally be a performance of that term of the contract, and in neither case would the board of education pass upon the personal qualification of the person coming thereby in close association with teachers and pupils.

The court is of the opinion that even assuming the application of Section 7623, General Code, to the letting of the contract in question, still there has been a substantial compliance with that section. Where a substantial compliance has been made, immaterial omissions and errors will not invalidate the contract entered into. This is the reason behind the language of the court in the case of *State ex rel* v. *Green,* 18 N. P. (N. S.), 97, at 116.

Second: Lastly it is urged that assuming that the board of education had power to make a contract for the cleaning of all the school buildings by one contractor, and that it proceeded according to law in so letting the contract, that still the attempted performance of the contract with James M. Sprague should be enjoined for the reason that it is impossible of performance and therefore void, and counsel cites and relies upon the rule stated in Parsons on Contracts, Vol. 2, page 73, in this language:

"But if one promises to do what can not be done, and the impossibility is not only certain but perfectly obvious to the promisee, as, if the promise were to build a common dwelling house in one day, such a contract must be void for its inherent absurdity."

The claim that this contract is impossible of performance by James M. Sprague is based upon the provision requiring the cleaning contractor to be in regular attendance at the school building from 7 a. m. until 6 p. m., and it is claimed that this requires the personal attendance of the cleaning contractor, and that inasmuch as the Sprague contract is for the cleaning of approximately 80 school buildings in different localities that necessarily the one contractor could not perform the terms of

that provision. If the court has correctly construed the specifications and the contract, they do not require the personal attendance of the contractor. However, for the purpose of this phase of the case it could be assumed that the terms of the contract themselves are susceptible of that construction and still the result claimed by the plaintiff would not follow. We are now considering the case on the hypothesis that the board of education has the power to enter into this sort of a contract and has done so; therefore if the contracting party proceeds to the performance of this contract in a certain way, and the performance by each is accepted and approved by the other as being in compliance with the terms of the contract, then the parties by their acts have placed a construction upon the contract, which construction will be followed by the courts at least to a limited extent, even as to public contracts in determining the meaning of any doubtful or ambiguous terms. *Kling* v. *Bordner,* 65 O. S., 86.

Furthermore, if the board of education has power to contract for the cleaning of the school buildings and the method of exercising that power is not circumscribed by any statute, then if any particular term of this contract is impossible of literal performance, the board of education having the power to contract with James M. Sprague for such service as is called for in the contract which is susceptible of performance by him, by continuing the contract and accepting the service it will by implication contract with him according to the service rendered. Where a body corporate has general power to contract it becomes bound by an implied contract to the same extent as it would be bound by an express contract.

For these reasons it is the opinion of the court that the board of education was vested with power to contract for the cleaning of school buildings; that with it was vested the discretion to determine what kind of a contract it should enter into; that the court has no power to control the discretion of the board of education in that regard in the absence of any proof of fraud or collusion, which is expressly disclaimed by the plaintiff in this case, and that therefore the prayer for an injunction should be and is denied, and the petition of the plaintiff dismissed.